FISSE, Appellant, v. BLANKE et al., Respondents.

St. Louis Court of Appeals, November 18, 1907.

**ACCOUNT STATED: Items of Account.** A statement against a corporation as debtor in one item with one charge for services, rendered at different times, partly to the corporation, partly to the individuals composing its officers and directors and partly to some of such officers and directors, is not an account stated for which such officers and directors would be liable in an action on an account stated against them, although they acknowledge their personal liability upon it to the plaintiff; it is not a statement of an indebtedness growing out of transactions be-between the plaintiff and all the defendants. An account stated must be based upon antecedent transactions between the parties out of which the relation of debtor and creditor arose.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale*, Judge.

AFFIRMED.

*Kortjohn & Kortjohn* for appellant.

In an action on an account stated based on a settlement for work and labor performed, the proof of settlement raises by implication the promise on the part of the defendant to pay. Korgel v. Given, 79 Mo. 77; Burger v. Burger, 34 Mo. App. 153; York v. Wester, Fed. Cases No. 18141; Chace v. Trafford, 116 Mass. 529; Kent v. Highleyman, 17 Mo. App. 9; Hawkins v. Long, 74 N. C. 781; Tassey v. Church, 4 Watts 15, 141; Clair v. Clair, 10 Neb. 54; Hendricks v. Kirkpatrick, 67 N. W. 759; Cochran v. Allen, 58 N. H. 250; Robbins v. Downy, 18 N. Y. Sup. 200; Robbins v. Downy, 16 N. Y. Sup. 205; Dyer v. Isham, 4 Ohio C. C. 429; Webster v. Pierce, 35 Ill. 158; Watkins v. Ford, 69 Mich. 357.

*Alphonso Howe* for respondents.

An account stated is defined as follows: "An account is a list or statement of monetary transactions,

such as payments, purchases, sales, debts, credits, etc., in most cases showing a balance or result of comparison between items of an opposite nature, e. g., receipts and payments." A detailed statement of the mutual demands in the nature of debt or credit between parties arising out of contracts or some fiduciary relation. 1 Am. and Ency. of Law (1 Ed.), 108, citing Sweet's & Bouvier's Law Dictionary. Presumption is that all previous dealings between the parties relating to the subject-matter of the account has been adjusted. Com. Elec. Sup. Co. v. Meysenberg, 85 Mo. App. 337; Pickel v. St. L. Chamber Com., 10 Mo. App. 191; Railroad v. Commission Co., 71 Mo. App. 299; Vanbebber v. Plunket, 27 L. R. A. 825; Rutledge v. Moore, 9 Mo. 537; Koegel v. Givens, 79 Mo. 77.

GOODE, J.—In 1900, the Trinity Rice Land and Canal Company was incorporated. The defendants were promoters of it prior to the incorporation and, as we understand, officers and directors after it was organized. The plaintiff, William E. Fisse, was attorney of the corporation from its inception, took part in organizing it, and attended to most of its legal matters during its existence. The company appears to have been a Texas corporation, at least its interests were in that State, though its promoters are citizens of St. Louis. The record does not disclose the exact nature of its business, but indicates that whatever the business was, the company was not prosperous and fell into debt. Some of its officers, and particularly the defendant C. F. Blanke, were indorsers on its paper. The evidence tends also to prove the capital stock was not fully paid and that there was a liability on the part of the stockholders to contribute to the payment of its debts. While its affairs were in this posture, the officers and directors instituted a suit in Texas for a receivership, and for a winding up of the affairs of the company. This suit

was begun in order to anticipate a similar proceeding by the creditors of the company; the idea being that if a winding-up bill was filed by the directors, receivers would probably be appointed who were less hostile to the interests of the directors and shareholders of the company, than receivers would be who might be appointed in a suit by creditors. Fisse instituted the suit for a receivership against the corporation, the plaintiffs in the suit being the individual defendants in the present one and some other shareholders and officers of the company. Fisse did other legal work for the company itself, some for its officers (the individual defendants) and some in particular for the president, C. F. Blanke. These services were in the main connected with the winding up of the company and the disposition of its assets so as to relieve the shareholders of any liability on the stock, and to protect Blanke and some other officers as indorsers on its paper. Just how far the receivership proceedings advanced before Fisse ceased to look after them is not shown; but during their progress a disagreement arose between him and C. F. Blanke, on account of the latter consulting another attorney, and thereafter plaintiff did little or nothing in the receivership suit. His testimony indicates, however, that he was willing to render further services. There was a Texas attorney by the name of Glasscock, who was likewise employed to assist in the receivership suit; that is, Glasscock was to co-operate with Fisse. The present action is against certain officers and directors of the corporation and is based on the following account stated:

"St. Louis, July 20, 1904.

"Trinity Rice Land and Irrigation Company and the plaintiffs in the action entitled H. O. Acom et al. vs. Trinity Rice Land and Irrigation Company, brought to the March Term, 1902, of the District Court of Chambers County, Texas, and now pending in the District Court of Liberty County, Texas.

"To W. E. Fisse,                                        Dr.

"To services rendered to date in matters of Trinity Rice Land and Irrigation Company, including receivership proceeding still pending, and for all services necessary to be rendered in order completely to settle affairs of company according to plan now in process of execution and hitherto authorized by stockholders — twenty-five hundred dollars — $2,500."

The petition declares that defendants on or about July 20, 1904, promised and agreed to pay plaintiff's demand, and thereafter, on July 21, 1904, did pay him $500, leaving a balance due of $2,000, for which judgment is prayed. Besides a general denial, the answer specifically denies there ever was an account stated between plaintiff and the individual defendants, or either of them or that they agreed to pay such account; or that there was a consideration for such a stated account against them or a promise by them to pay it; that defendants as officers and directors of the Trinity Rice Land and Canal Company, employed plaintiff in behalf of said corporation to render legal services to it, and that the services for which he seeks to recover were rendered to the corporation and not to the individual defendants; said defendants deny that on or about July 20, 1904, they promised to pay plaintiff's demand, but state that on said date plaintiff agreed with the corporation to render certain specified services, the greater portion of which were to be performed in the future, and thereupon the company paid him $500 on his account against it; that thereafter plaintiff refused to perform the services he agreed to perform and for that reason the corporation owes plaintiff nothing. At the instance of the plaintiff the trial court found the facts as follows:

"The Trinity Rice Land and Irrigation Company was organized as a corporation about the year 1900. The plaintiff, together with his then partner, Mr. Kort-

john, under the style of Fisse & Kortjohn, acted as the attorneys for the corporation; they having prepared the original articles of incorporation; and the plaintiff continued to act as counsel or attorney for the corporation from that time down to July, 1904, and during the intervening years performed the services for the corporation that are involved in this suit; that the plaintiff was employed by the corporation and not by the directors as individuals; that plaintiff never rendered any bill of any kind for services to any individuals, either stockholders or directors of the corporation, and never rendered any bill to the corporation itself, except the bill introduced in evidence in this case, dated July 20, 1904.

"The question of the personal liability of the defendants in this suit, or, at least, some of the defendants, was never discussed between the plaintiff and such defendants, except at a meeting of the Board of Directors of the corporation held in July, 1904, at which meeting plaintiff presented his bill for services, and then for the first time stated to some of the defendants who were present at the meeting, that they were personally liable to him for the value of his services, and that certain of the defendants then yielded to the argument or persuasion of the plaintiff, and admitted their liability.

"As stated above, I find that there was no intention on the part of the plaintiff to hold the directors of the corporation personally liable, and there was no contract between him and the individuals composing the directory of the corporation at the time he was engaged to render services.

"I further find that although plaintiff was ready and willing to perform the services called for in the account rendered shown in evidence, he did not perform all the services because the corporation dispensed with his services and employed another attorney some time after July 20, 1904.

"As a matter of law, I conclude that there was no

consideration for the promise upon the part of any of the directors to pay the amount of plaintiff's bill, inasmuch as they were not legally liable to him for any sum.

"I further conclude, as a matter of law, that the bill rendered under the circumstances detailed in the evidence, does not constitute an 'account stated.'"

Declarations of law were asked by plaintiff and refused, but in the view we take of the case it is unnecessary to consider them.

The occurrence which is mainly relied on by plaintiff as a stating of the account in suit between him and the defendants, was his presentation of it at a meeting of the directors of the company on July 20, 1904. Plaintiff testified that on said occasion the question of the personal liability of the defendants came up, Mr. Blanke saying he did not think the officers and directors ought to be held personally liable; that thereupon plaintiff stated that he had performed the services for the directors and no one else and, finally, those who were present, being considerably more than a quorum of the board, "yielded to the argument that they were personally liable;" that then a discussion came up as to how to get the money to pay him, and there was talk at first of a subscription by the stockholders, but this was abandoned because so many previous subscription lists had not produced results; that plaintiff and Glasscock were then asked to present their bills and did present them, and it was finally agreed that $500 should be paid to plaintiff and $500 to Glasscock on account, the remainder to be paid thereafter when the money was raised. The testimony for the defendants was that plaintiff at said meeting in July, for the first time informed the directors that he expected to hold them personally for payment for his services; that the defendants did not admit they were liable or assent to the proposition that they should pay in person. It was proved that the five hundred dollars paid to plaintiff was paid by the corporation and that he

executed a written receipt to the company for the money. Plaintiff explained the form of the receipt by saying it was given in that way in order that C. F. Blanke might look to the company for reimbursement, as Blanke had to furnish the money; that it was generally understood said Blanke was the only one who could pay anything.

It looks a good deal like some of the services in controversy were rendered for the benefit of the directors personally and not for the corporation. It is difficult to see how the corporation could be bound by the directors to pay fees of counsel in a suit instituted by the directors individually and in their own behalf, against the corporation, to bring about its dissolution. Still, the evidence shows it was expected Fisse and Glasscock would be allowed attorney's fees by the Texas court to be paid by the receiver out of the company's assets. In view of the fact that the purpose of this suit was primarily to protect the directors and shareholders from personal liability for the debts of the company, if there was nothing else included in plaintiff's demand except said item, and it was for a specific sum, we might find ourselves unable to agree with the finding of the court below that there was no consideration for a promise by individual defendants to pay it. But this action is on an account stated, and hence an account of that nature must be established as a basis of recovery. [Wonderly v. Christian, 91 Mo. App. 158.] In other words, plaintiff having sued on such a settlement, cannot recover on proof, not of an account stated, but that he was entitled to judgment for one item in a miscellaneous account, embracing a claim for services rendered the company itself and others rendered to C. F. Blanke, and still others rendered to all the individual defendants. The finding of the court below that the document declared on was not an account stated and that there had been no agreement by the individual defendants of a binding character to pay the demand, is sound. It is manifestly impossible on

plaintiff's own testimony to hold that the account in suit was stated between him and the individual defendants, as the amount of their personal indebtedness to him for services rendered to them collectively. His statements show he did not regard a portion of his services as having been rendered for the individual defendants, or that they were liable for the same; and show, too, that, in the main, the only individual defendant whom he thought was indebted to him was C. F. Blanke. Plaintiff testified that his bill or account stated did not include services rendered to the company from its organization, but only those rendered in connection with the receivership and other steps taken to bring about a reorganization; that though he had done all the work of the company up to the time of the receivership proceeding, this was not in his bill. At the same time he testified that he never had been paid anything for work done for the company itself from its inception, except some traveling expenses — never had been paid any fees. But the foregoing statements are inconsistent with the account declared on; which purports to be for all services rendered to its date (July 20, 1904) to the Trinity Rice Land and Canal Company, including the receivership proceeding still pending, and for all services to be rendered in order to settle the affairs of the company. He said that when his account was presented to the directors' meeting, C. F. Blanke said he thought the individuals ought not to be charged and that he (plaintiff) said he "never had rendered any of the services in this matter to anybody except the individuals." Plaintiff further said that from the beginning the promoters started out with the knowledge that the company was absolutely insolvent, and there was nothing paid, except by Mr. Blanke, or some other of the persons interested; that he discussed the bill for a receiver and showed the directors they had individually brought that action, not for the benefit of the company, but to protect themselves; and

that it was for the individual benefit of those who were stockholders and bondholders in the company and whose claims were adverse to those of general creditors. When plaintiff attempted to explain why he had stated in his account that it was for services up to date rendered to the company, he said he did not intend to charge the company anything; that this services up to the time of the receivership proceeding were not charged and he did not intend to charge anything for them. But it is manifest that the account contains such a charge. Again the plaintiff's testimony proves some of the services included in the present bill were rendered to C. F. Blanke, one of the defendants. In this connection plaintiff testified as follows:

"Q. Mr. Blanke really owes more of this bill than the other people? A. I have always felt that the real liability to me was from Mr. C. F. Blanke.

"Q. You have released some of the defendants? A. I told Mr. Buehler if I recovered a judgment against him I would not pursue it.

"Q. Didn't you give him a written discharge? A. I think the paper will show for itself.

"Q. Didn't you also release Mr. Pommer? A. I think I did."

In view of the plaintiff's testimony, it is perfectly evident that he himself did not regard the account he presented to the company, as consisting exclusively of items for services rendered to the individual defendants and for which they were each and all liable to him. The facts to be derived from what he said are, that he had rendered some services for all the defendants, some for a portion of them, and other services for the company itself. He included these services in one account and presented it to the board of directors; no doubt expecting that it would be ordered paid by the company without any apportionment of it according to the respective liabilities of the several debtors. This bill was presented

to the board as such; but plaintiff notified the members of the board that he expected to hold them individually. This could not have been meant for all of them; because one of them, Mr. Buehler, was not a party plaintiff in the Texas receivership suit, and hence was not within the terms of the account, which purports to be against the company itself and the plaintiffs in said Texas suit. What the plaintiff said about the promise of the individual defendants to pay the bill is that "in the end they yielded to the argument that they were personally liable." The whole matter appears to have been informal. The document sued on was not an account stated, because, on its face and in connection with plaintiff's testimony, it is a conglomeration of different items of service rendered, and is not a statement of an indebtedness growing out of transactions between the plaintiff and all the defendants, both individual and corporate. [1 Am. and Eng. Ency. Law (2 Ed.), p. 445; Bloomby v. Grinton, 1 U. C. C. P. 309; 1 Am. and Eng. Ency. Law (2 Ed.), p. 437; Railroad v. Commission Co., 71 Mo. App. 299; Lemere v. Elliott, 6 Hurlst. & N. 658.] An account stated is not created by the bare fact that one person makes a demand in writing upon another and the latter acknowledges liability and agrees to pay the demand; which, perchance, may have grown out of transactions between the demandant and a third party, but the party against whom the demand is preferred may believe he is liable. A demand takes the form of an account stated when it is based on antecedent transactions between the parties and the relation of debtor and creditor arose out of the transactions. The stated account is supposed to take the place of the original indebtednesss and to constitute a new promise. [Note to Lockwood v. Thorne, 11 N. Y. 170; 62 Am. Dec. 193; Bambrick v. Simms, 102 Mo. 158, 14 S. W. 935; Stenton v. Jerome, 54 N. Y. 480; Austin v. Wilson, 11 N. Y. Supp. 565; Vanbibber v. Plunkett, 26 Oreg. 562, 27 L. R. A. 811.] That a person is not

necessarily liable in an action on an account stated because he has admitted liability for a demand and promised to pay it, is well illustrated in Lubbock v. Tribe, 3 M. & W. 606. In that case the defendant had given the plaintiffs, who were bankers, a check to pay for shares in a company. The check was lost and not charged to the defendant's account in the bank whereon it was drawn. He received his shares as paid for by the check given to the plaintiffs as agents for the company, and they asked him to give another check, which he promised to do but never did. On these facts it was held he was not liable in an action on an account stated. The opinion of Lord ABINGER says:

"It appeared that the defendant was indebted to the Kellewerris Company for certain shares and when they threatened to bring an action against him for the amount, he said, 'I have paid it (by check or note of hand) to your agents,' the plaintiffs. If he did so, and they afterwards refused or neglected to present the check at the proper time, and lost it, they are accountable to the Kellewerris Company and he is not accountable to them; when they failed to present the check in due time, they made it their own, and they are bound to pay the company and cannot recover from the defendant. Then as to the account stated; I have often observed that there is a good deal of confusion in the books on questions of accounts stated, — not the older books but the modern ones; they lay down this, that where there is a promise to pay a sum of money as due from A to B, it is evidence of an account stated; which means this, that the simple promise, if it stand unexplained and uncontradicted, is evidence to go to a jury that the plaintiff claims that sum to be due, and that there are matters of account between the parties; it does not go further than that; and it is only when you come to look at the facts on which the promise was made that you are enabled to see whether it is an account stated or not. Here

there was nothing due from the defendant to the plaintiffs at all; the only thing in respect of which they had a claim upon him was upon his promise; and they might have had an action against him for not performing that promise, because no doubt it was made upon good and sufficient consideration; but it was not in the nature of any debt due from the one to the other at all."

The document in the case at bar was really a written demand, without particulars, against the company, and those officers of it who were plaintiffs in the Texas suit, for compensation for all the services Mr. Fisse had rendered to the company itself or to said individuals separately or collectively. It was preferred in expectation of payment from some source and likely by the company.

The judgment is affirmed.   All concur.