PETER McKENZIE, Respondent, v. M. H. HALL, Appellant.

In the Kansas City Court of Appeals, April 3, 1922.

1. ACCOUNT STATED: Defined: Evidence Held to Show That Transaction Contained Every Element of a Stated Account. Where the evidence shows that at a conversation between the parties they agreed upon the amount due from defendant to plaintiff, with the exception of one item, the exact amount thereof being unknown at the time, and that defendant executed a note to plaintiff for the approximate amount due, and thereafter when the parties definitely ascertained the correct amount due, defendant gave another note for an additional amount, *held* that there was an account stated between the parties, which is an agreement, between parties, who have had previous transactions of a monetary character, that all the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for payment of such balance.

2. ———: Payment: Notes Held not Payment of Amount Found to be Due and Plaintiff Was Entitled to Recover upon Orignal Ac-

210 Mo. App.]                    (1)

count Stated.  Where parties settling up their transactions covering a number of years, agreed upon a balance of sum certain owing by defendant to plaintiff, and by giving his notes after the other adjustments were made, defendant agreed to pay the balance found to be due, and there being no evidence that the notes operated as a payment of the amount found to be due, and as one of them was paid and the other in defendant's possession at the time of trial, plaintiff could recover upon the original account stated.

3    ———: **Entry Showing Open Account Between Parties Held Insufficient to Disprove That There Was an Account Stated.**  Where defendant, for a great many years transacted business as agent for plaintiff, who was practically blind, remitting sums to plaintiff from time to time, made an entry in plaintiff's account at the time there was a settlement of their affairs showing that there was an open account between them, which entry plaintiff stated was not in the same form when it was read to him by defendant and he thought the same was more definite than it proved to be, he believing the same to be a receipt for a note and acknowledgment of the debt, *held*, that as the acts of the parties, after the making of the entry, showed that there was a settlement and an account stated, the entry will not be given any weight.

4.    ———: **Pleading: Where Defendant Did not Plead There Was Any Mistake in Settlement of Account, but Waited Until Suit Was Brought, Seven or Eight Years Thereafter, to Make Said Claim, Held Such a Defense Could Not be Made.**  Where, at time suit was brought seven or eight years after an account stated between the parties, it was claimed that there was a balance due defendant, and defendant did not plead matters to surcharge and falsify the account, or allege that there was any mistake in settlement, but denied the account stated, and waited until after suit was brought before bringing the attention of the plaintiff thereto, *held*, such a defense could not be made.

Appeal from the Circuit Court of Atchison County.— *Hon. John M. Dawson*, Judge.

AFFIRMED.

*John A. Gerlash* and *Hunt, Bailey & Hunt* for respondent.

*L. C. Ramsay* and *W. R. Littell* for appellant.

BLAND, J.—This suit is brought in two counts; the first is to recover on a promissory note alleged to have been executed by defendant in favor of plaintiff. This note reads as follows:

"Tarkio, Missouri, Nov. 4, 1912. $10,000.

"On demand——days after date, we promise to pay to the order of Peter McKenzie, ten thousand dollars, for value received, with interest from date at the rate of five per cent per annum, payable annually, and if the interest be not paid annually, the same shall become as principal and bear the same rate of interest. Each of the makers hereof and the endorsers hereon, waived demand, notice and protest on this note. M. H. HALL, V. M. HALL, M. HAROLD HALL, Jr."

The second count alleges that plaintiff loaned the defendant $10,000 on the 9th day of December, 1912, to be paid on demand and bearing five per cent interest per annum. It admits certain payments and prays judgment for the balance due. The answer denies generally the allegations of the first count of the petition and alleges that the note mentioned was not delivered or intended to be delivered. The answer to the second count of the petition consists of a general denial and alleges that there is a balance due defendant and prays judgment for the same. The reply pleads an account stated on December 9, 1912, and that the balance due plaintiff was agreed upon and pleads the statute of limitations as to any item of the account that accrued prior to December 9, 1912. The case was referred and upon hearing the evidence the referee found an account stated on December 9, 1912, and, after allowing certain credits arising after that date, found that defendant was indebted to plaintiff in the sum of $4603, and recommended that the court enter judgment for that sum with interest from July 16, 1920. Upon the filing of the report of the referee defendant filed his exceptions which were overruled, and the report was approved by the court and judgment entered

for plaintiff in accordance with the recommendations of the referee.

The facts show that in 1901 the parties hereto had lived for many years in Atchison county, Missouri, and had become close friends. At that time plaintiff owned a large farm and much personal property in said county but had become financially embarrassed. He went to Canada to seek financial assistance from his brothers and borrowed from them $23,500. From that time plaintiff spent most of his time in the State of Idaho and in Canada, leaving his business affairs in the hands of defendant at Tarkio, Atchison County, Missouri. Practically the entire charge of plaintiff's property was left to defendant who handled it as though it were his own. The money realized from plaintiff's property was placed in the bank at Tarkio in plaintiff's name but was checked out by defendant's signing plaintiff's name to the checks. Defendant from time to time would borrow money from this account for his own use, presumably without plaintiff's knowledge, and deposit demand notes in its place. Defendant handled plaintiff's property and money with almost unlimited authority as general and confidential agent, remitting sums to plaintiff from time to time. No account was ever demanded although a great amount of business was transacted for about eleven years, or until 1912. The only property of plaintiff undisposed of in 1912 was some small real estate in Tarkio, which had been sold but the money not collected, when plaintiff came from Canada to Tarkio for the purpose of making settlement. Plaintiff stayed at defendant's house eight or nine days and either on November 4th or December 9, 1912 (the true date will be discussed hereinafter), plaintiff claims he made a settlement with defendant. Prior to November 4th a mortgage belonging to plaintiff on Idaho property had been paid off and the money received by defendant and deposited in a bank at St. Joseph, the exact amount being unknown to the parties on that date.

We think the evidence fairly disclosed that on November 4th the matter of settlement was first taken up. Plaintiff testified that on that day defendant examined his books and found that he owed plaintiff $10,000 of $11,000. We conclude from the evidence that the exact amount was not known at that time on account of the uncertainty as to the amount of money at St. Joseph. Plaintiff testified that defendant then executed the $10,000 note above set out and delivered it to plaintiff who handed it back to defendant to be placed in the bank for safe keeping. Defendant gives a somewhat different version of the transaction. He testified that plaintiff said to the effect "Well, how do we stand?" That defendant casually looked over the account without a careful examination of it and remarked about the Idaho mortgage money. Plaintiff said that defendant owed him over $10,000. Defendant testified that he (defendant) then said, "It looked like he (plaintiff) had $11,000 and something." He told plaintiff that he would call up St. Joseph and find out the exact amount of the mortgage money. This proved to be $9649.68.

Defendant admits that he signed his name and the name of his two sons to the note at this conversation on November 7th and that he thought that he owed plaintiff at that time that much money but afterwards upon a careful examination of his books he discovered that he owed plaintiff an amount between $5000 and $6000. Defendant never communicated to plaintiff this information and did not make and such claim until after suit was filed, although the money was often demanded of him by plaintiff. Defendant always put plaintiff off when written to for the money but made partial payments from time to time. Defendant denies that he delivered the note to plaintiff but admits that he read it over to plaintiff who was at the time an aged man and totally blind. Defendant testified that he prepared the note merely as a memorandum for his own convenience and that it was not intended to be a binding obligation. But we think

the evidence shows almost conclusively that it was the intention of the parties on November 4th that there be a settlement of the account subject to correction when the exact amount of the Idaho mortgage was obtained.

On December 9th plaintiff requested that defendant execute the following note by writing these words in plaintiff's memorandum book—"Tarkio, Missouri, Dec. 9, 1912. $700. On demand after date, I promise to pay to Peter McKenzie Seven Hundred Dollars ($700). M. H. Hall.'' This note was afterwards paid in full by defendant. On the same day plaintiff asked defendant to make an entry in the former's memorandum book. In reference to this entry plaintiff testified—"I got him to make that entry in the book for the purpose if anything should happen to me that they would realize and know that there was a note for $10,000 in his possession and I got him to make that entry in that account to show for that note." Defendant then wrote in plaintiff's book the following—

"Tarkio, Missouri, December 9. To whom it may concern. This is to say that N. H. Hall has an open account with Peter McKenzie which is a matter of open record of credits and debits which will explain itself.''

Defendant testified that he read this entry to plaintiff exactly as it was written but plaintiff testified that what was read to him was—"A copy of what I supposed was a more direct acknowledgment of the fact that I was leaving this $10,000 note and the $700 account at Morris Hall's house to be called for when I wanted it." He also testified that he thought the writing was more definite than it proved to be. When he arrived at his home in South Dakota his niece read over to him the memorandum and he discovered that it did not contain the true agreement and he had her write upon it the words, "This account is for Eleven Thousand Dollars at 5% int. annum. Peter McKenzie." Defendant says thet plaintiff desired this $700 note to take with him to Canada or elsewhere to show that he had money coming to him in connection

with borrowing money if he so desired. Of course as defendant denied the validity of the $10,000 note as an obligation he admits that he owed plaintiff the $700 and more when he signed the note in that amount. However, in order to accept defendant's version of the $700 note transaction we must also accept his evidence that there was no settlement when the $10,000 was given, but as we think there can be no question but that it was the intention of the parties that a settlement was then had, we cannot accept defendant's version of the $700 note transaction but find the facts to be in reference to this transaction, from inferences from the evidence that are strong, that defendant after signing the note of $10,000 on November 4th called up St. Joseph and secured the exact amount of the mortgage money and on having this information on December 9th came to a final settlement with plaintiff. The amount of money owing plaintiff according to defendant's book (plaintiff having no other means of knowing the amount) was slightly over $11,200. Plaintiff had already secured the $10,000 note and the difference was made up by the execution of the $700 note; $500 was allowed defendant by plaintiff for his services and the small balance was paid in cash by defendant. No other business was transacted thereafter by defendant on behalf of plaintiff except the closing up of the sale of the Tarkio property.

Defendant urges that the court erred in finding that there was an account stated on December 9, 1912, and excluding the credits shown by defendant of earlier date amounting to more than $5000. We think there is no question but that there was an account stated on December 9, 1912. An account stated is defined to be— "an agreement, between parties who have had previous transactions of a monetary character, that all the items of the accounts representing such transactions are true and that the balance struck is correct, together with a promise, express or implied, for the payment of such balance." [1 Amer. and Eng. Ency. of Law (2 Ed.), p.

437.]    In Kansas City Commercial Photo View Co. v.
Kansas City Bridge Co., 233 S. W. 947, 948, it is said—

"It is well settled that to support an action on an
account stated plaintiff must show that there is a
demand on one side that is acceded to the other, and
there must be a fixed and certain sum admitted to be due.
There need not be an express admission." [See, also
Risinger v. Begley, 190 S. W. 418, 419; Davis & Co. v.
Boswell & Strawn, 77 Mo. App. 294, 297.]

We think the transaction of December 9th contains
every element of a stated account. The parties were set-
tling up their transactions covering a number of years.
Plaintiff was in Tarkio for that purpose. They agreed
upon a balance or sum certain owing by defendant to
plaintiff, and giving his notes (for $10,000 and $700),
after the other adjustments were made, defendant agreed
to pay the balance found to be due. There is no evi-
dence that the notes operated as a payment of the amount
found to be due and as one of them was paid and the
other in defendant's possession at the time of the trial,
plaintiff could recover upon the original account stated.
[Big Four Implement Co. v. Chesney, 223 S. W. 944.]

However, it is insisted that the parties by making
the entry in plaintiff's memorandum book agreed that the
account was still an open one. Defendant gives no reason
as to why he wrote this entry except that plaintiff re-
quested it. As we are so strongly convinced that the
other acts of the parties show that there was a settlement
and an account stated, we accept plaintiff's version of
this matter. The entry was not drawn up by defendant
to express the true understanding of the parties and it
was not read to plaintiff in a way that he understood its
meaning and import. Plaintiff thought the memoran-
dum was in the nature of a receipt for the note of $10,000
which he handed back to defendant, or an acknowledg-
ment of the debt. We attach no weight to this entry. The
actions of the parties after this entry show that they
treated the whole matter as settled. Plaintiff within

a few days left for his home in South Dakota. He did not return but afterwards wrote defendant asking payment of the $10,000 note. The correspondence between them shows that defendant, evasively we think, did not say anything about the amount of money he owed plaintiff but always put plaintiff off except for certain payments made, and when suit was brought claimed that there was a balance due him. Defendant did not plead that there was any mistake in the settlement and if he had, no such defense would avail him as he waited seven or eight years and until after suit was brought before bringing the attention of plaintiff to the alleged mistake. [1 C. J. 713, 714; Cannon v. Sanford, 20 Mo. App. 590; Wonderly v. Christian, 91 Mo. App. 158.] Defendant did not plead matters to surcharge and falsify the account but denied the acount stated. Even had he pleaded such a matter under the facts, it would have availed him nothing.

The judgment is affirmed. All concur.