

# In the Missouri Court of Appeals
## Eastern District

DIVISION FOUR

IN THE MATTER OF: DUANE R. BARNARD )     No. ED102778
)
)     Appeal from the Circuit Court of
)     Knox County
)
)     Honorable Fred L. Westhoff
)
)
)     Filed: March 22, 2016

### Introduction

Duane R. Barnard (Appellant) appeals from the probate court's March 6, 2015 Final Order and Judgment supplementing, modifying, completing and finalizing its December 23, 2014 Judgment of Partial Disability, appointing Appellant's wife, Cheryl Barnard (Barnard), limited conservator of Appellant's estate.[1] We reverse both judgments.

### Factual and Procedural Background

On January 16, 2014, Jon and Betty Jo Simmons (collectively Petitioners) petitioned the probate court requesting their appointment as co-guardians and co-conservators for Appellant, 83 years old at that time, who Petitioners alleged was "unable to adequately manage his personal needs without supervision …." Petitioners alleged they were "close personal friends" of

---

[1] Pursuant to the court's March 6, 2015 judgment, Letters of Limited Conservatorship of a Partially Disabled Person were issued to Barnard on March 9, 2015.

Appellant and were the "current attorneys-in-fact of [Appellant's] Durable Power of Attorney with Healthcare Directives & Living Will."

On August 20, 2014, a hearing was held on the petition. Nurse practitioner Christine Tisinger (Tisinger) testified that on December 30, 2013, approximately eight months earlier, she administered one cognitive test, called a "clock test," where Appellant was to draw the hands of a clock on a piece of paper. Tisinger stated Appellant failed the test and so she found him cognitively impaired, in that he "lacked the ability to make sound decisions because he lacked the ability to show insight or communication clearly, and he had difficulty receiving speech or spoken instructions as well." She testified that if unsupervised Appellant could not meet his essential needs for food, shelter and medical care and could not manage his financial resources.

Kris Chambley (Chambley) of the Department of Health and Senior Services testified she received a hotline report on December 30, 2013, the same date Appellant had his appointment with Tisinger, regarding Appellant and claims of medical neglect and financial exploitation of the elderly. Chambley had a visit with Appellant on January 4, 2014, and also interviewed Barnard. Between January 4 and February 28, 2014, Chambley spoke with Appellant and Barnard a few times and "suspected" Barnard of financial exploitation but eventually conceded that she did not have the evidence to substantiate the report. Chambley had no further contact with Appellant after February 28, 2014.

The deposition of Dr. Eugene Childress (Dr. Childress), who periodically treated Appellant and had last seen him on January 16, 2014, was admitted into evidence. He states in his deposition that he believes Appellant "has functional dementia, which means he can carry out, you know, his activities of daily living…" and he does not "believe that [Appellant] has the

2

ability to do complex problem solving or such things as, you know, buying and selling stocks on the exchange or, you know, diamonds or land…" but he could handle his normal daily expenses.

Michael Williams (Williams), an attorney who had prepared amendments to Appellant's trust and worked on a real estate sale between Appellant and Petitioner Jon Simmons, testified Appellant understood what he was doing regarding these legal matters.

On August 20, 2014, after hearing evidence presented by Petitioners, the probate court found Appellant "to be incapacitated and disabled, and in need of a guardian and conservator." The court memorialized its findings in a judgment dated October 8, 2014, appointed Appellant's daughter, Melinda Wentz (Daughter), and the Knox County Public Administrator Theresa Hamlin (Hamlin), as co-guardians and co-conservators, and purported to void Appellant's marriage to Barnard and past financial transactions.

On October 23, 2014, Appellant moved to set aside the court's October 8, 2014 judgment because: (a) he was not incompetent; (b) a full guardianship/conservatorship was unnecessary; (c) the court had no jurisdiction to nullify his marriage; (d) the judgment was vague as to what past financial transactions were void due to incompetency; and (e) the evidence at trial was not clear and convincing as required.

On October 31, 2014, the probate court stated that it was "willing to reopen the medical evidence upon [Appellant's] condition as it relates to incapacity and disability."

On December 5, 2014, the probate court heard testimony on Appellant's motion to set aside the court's finding of disability. The docket entry indicates, "[Appellant] appears in person and by Attorney Garrett. [Hamlin], [Daughter] and [Barnard] appear in person. No other interested person appears in person or by counsel." New evidence was presented at the December 5, 2014 hearing. Psychiatrist Dr. Jeffrey Harden (Dr. Harden) examined and

3

psychiatrically evaluated Appellant.  His report was entered into evidence.[2]  The probate court, familiar with Dr. Harden, called him "a very capable physician and psychiatrist."

Dr. Harden stated Appellant was a friendly, cooperative, engaging individual who interacts in an emotionally appropriate fashion.  Dr. Harden administered the clock test, in which he instructed Appellant to draw the face of a clock indicating the time 11:10.  Dr. Harden reported "he did so in an accurate fashion quite readily."  Dr. Harden stated Appellant appeared to be experiencing mild cognitive decline in that he had difficulty with sustaining his focus on repetitive tasks, his ability to recall long-term events and his immediate recall seemed limited.  Dr. Harden noted his capacity for abstract thought and his judgment both seemed appropriate.  Dr. Harden assessed Appellant's abilities to quickly focus his attention on an issue, understand its implications, and come up with a clear plan of action is now such that he will require longer periods of contemplation before he can achieve meaningful conclusions.  Because of these observations, Dr. Harden concluded that "consideration should be given" to Appellant having a conservator and/or guardian in matters of finances and management of property and other material resources because he believed such a conservator could serve the purpose of impeding any sudden, rash or misdirected financial decisions that Appellant "might" be manipulated into.  Dr. Harden opined "it would be in Appellant's best interest for him to select a durable power of attorney to manage matters of healthcare, finances, domicile, etc. should he eventually be found to be incapable of competently caring for himself in those matters."

Hamlin, the Knox County Public Administrator, whom the court had preliminarily appointed to be Appellant's co-guardian and co-conservator on August 20, 2014, also testified.  Hamlin testified she had a lot of personal contact with Appellant since becoming one of his co-

---

[2] Dr. Harden's report also refers to the reports of two other doctors.  Dr. H. Ghanekar's report stated Appellant was "competent to manage legal business and financial affairs."  Dr. R. Hall, Ph.D.'s report found Appellant was "functioning as a 'normal and sane individual and needs no outside assistance.'"

4

conservators and co-guardians on August 20, 2014. Like Dr. Harden, she found Appellant to be "very outgoing, very friendly." Her opinion was that Appellant is very well known in the community and people enjoy his company. She said she personally sees Appellant and Barnard visiting with people in restaurants. Hamlin also found Appellant to be "very intelligent." She learned he served as a Sergeant Major in the Army for 34 years.

Hamlin testified Appellant lives on a farm with Barnard, and Appellant has shown Hamlin around the buildings and operations of the farm. Appellant, according to Hamlin, is definitely an active man, always on the go, whether it is mowing the yard, doing repairs, painting the house or doing fence work. She said Appellant explained the intricacies of his farm to her as they drove around it, explaining how a terrace farm works and the way the water is diverted to take care of the fields. She stated the fields and terraces appear to be maintained and in good condition, and their home is comfortable and clean. She said Appellant also has a home in Mississippi he and Barnard visit.

Hamlin testified she saw nothing to indicate Barnard was taking advantage of Appellant, and on the contrary, Barnard was very supportive, helpful and cooperative.

Hamlin testified Appellant definitely understands his business affairs, does his own accounting, keeps accurate records and itemized documentation of his finances and transactions, including lists, bills and receipts; and knows how much he has in the bank at all times. She stated Appellant is very aware of and definitely capable of managing his finances, income, expenses, and checkbook.

Hamlin said before she became involved with Appellant, he had entered into the sale and rental of certain property with Petitioners without a written contract, because Appellant stated he believed a man's word was his bond and sacred. The sale was for less than market value, and

5

Petitioner Jon Simmons defaulted on his payments, which Hamlin saw as Petitioner Jon Simmons' abuse of the situation, rather than due to mental unfitness on the part of Appellant.

On December 23, 2014, the probate court entered a Judgment of Partial Disability, to the effect that Appellant "shall be only disabled as to the transfer of major assets or their conversion to another form. Permission shall also be obtained from the Court for after death transfer designations not currently in place such as transfer on death designations or beneficiary deeds." The probate court set aside any prior, inconsistent decisions, including its October 8, 2014 judgment, and set aside any prior orders nullifying Appellant's marriage to Barnard. Barnard and Hamlin were appointed co-conservators for Appellant.

On March 6, 2015, the trial court entered a Final Order and Judgment that "supplement[ed], modifie[d], complete[d] and finalize[d]" its December 23, 2014 Judgment of Partial Disability. This second judgment discharged Hamlin as co-conservator, leaving Barnard, Appellant's wife, as sole conservator. It also reduced conservatorship oversight from the transfer of any major assets to the transfer only of real property. As to the powers and duties of the conservator, the court specifically ordered as follows:

> The powers and duties of the limited conservator, [Barnard], shall include forbidding and not permitting any sale, transfer or conversion of real property as set forth in this Final Order and Judgment. Said limited conservator shall not transfer any title, legal or equitable, in any of the property to herself as limited conservator or otherwise. Said limited conservator, [Barnard], is dismissed and discharged as to any powers and duties she may previously have been charged with as to [Appellant's] property that is not real property.

On March 9, 2015, Letters of Limited Conservatorship of a Partially Disabled Person were issued to Barnard, pursuant to the court's March 6, 2015 Judgment. This appeal follows.

## Point on Appeal

Appellant maintains the probate court erred in finding him partially disabled and appointing a conservator for him because the decision was not based on clear and convincing evidence and was in fact against the weight of the evidence in that Appellant is a normal functioning 86-year-old.

## Standard of Review

A court-tried probate case is reviewed under the standard of <u>Murphy v. Carron</u>, 536 S.W.2d 30 (Mo.banc 1976). Under that standard, the probate court judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. <u>Id.</u> at 32; <u>In re Estate of Schooler</u>, 204 S.W.3d 338, 342 (Mo.App. W.D. 2006).

## Discussion

A disabled person is one who is unable by reason of any physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that the person lacks ability to manage his financial resources. Section 475.010(5)(a).[3] The term disabled or disabled person includes the terms partially disabled or partially disabled person. Section 475.010(5)(b). A partially disabled person is one who is unable by reason of any physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that such person lacks capacity to manage, in part, his or her financial resources. Section 475.010(15). "Manage financial resources" means the ability to take those actions necessary to obtain, administer, and dispose of real and personal property, intangible property, business property, benefits, income or any assets, or those actions necessary to prevent waste, loss or

---

[3] All statutory references are to RSMo 2012, unless otherwise indicated.

dissipation of property. Section 475.010(12), Matter of Estate of Potashnick, 841 S.W.2d 714, 717 (Mo.App. E.D. 1992).

Petitioners, seeking appointment as co-conservators and co-guardians of Appellant and his property, have the burden of proving Appellant's incapacity, partial incapacity, disability, or partial disability by clear and convincing evidence. Section 475.075.7; Matter of Conservatorship Estate of Moehlenpah, 763 S.W.2d 249, 261 (Mo.App. E.D. 1988); In re Myles, 273 S.W.3d 83, 85 (Mo.App. E.D. 2008). Clear and convincing evidence is evidence which clearly convinces the fact finder of the truth of the proposition to be proved. Matter of Moore, 885 S.W.2d 722, 728 (Mo.App. W.D. 1994). For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true. In re Marriage of A.S.A., 931 S.W.2d 218, 222 (Mo.App. S.D. 1996).

A conservator may be appointed to handle some or all of the financial affairs of an alleged disabled person, Section 475.079, Matter of Nelson, 891 S.W.2d 181, 184 (Mo.App. W.D. 1995), if there is clear and convincing evidence the individual is unable by reason of a physical or mental condition to receive or evaluate information or to communicate decisions to such an extent that he lacks the ability to manage his real property. Section 475.010(5)(a), Section 475.075(7), Nelson, 891 S.W.3d at 184. The determination of whether to appoint a conservator is based on the respondent's condition at the time of the hearing. Thiel v. Miller, 164 S.W.3d 76, 86 (Mo.App. W.D. 2005).

Petitioners filed the petition alleging disability on January 16, 2014. Petitioners set forth their evidence and the court rendered its original judgment on October 8, 2014. On November 14, 2014, Petitioners' attorney filed his motion for withdrawal. This motion was granted by the

probate court on November 18, 2014. The probate court then set aside its October 8, 2014 judgment which had been based on the evidence Petitioners had presented in support of their petition. Petitioners then failed to participate in any other proceedings and abandoned their petition. At the hearing on December 5, 2014, the court noted, "There is a motion filed for I think reconsideration of the Court's earlier judgment in the case. And further for the record, the original Petitioners, Jon Simmons and Betty Jo Simmons appear not either in person or by counsel." However, the court noted the presence of Appellant and his attorney Jim Garrett, who had filed the motion for reconsideration of the earlier judgment; Hamlin; and Daughter, who with Hamlin had been appointed co-guardians and co-conservators for Appellant in the earlier case.

The probate court then rendered new judgments, on December 23, 2014 and March 6, 2015, the only ones challenged by Appellant in this appeal. In its December 23, 2014, judgment the probate court stated, "Any prior Judgment or Order inconsistent with this Judgment is hereby set aside, and held for naught, including the Court's Judgment dated October 8, 2014. Any prior order setting aside the marriage of [Appellant] and [Barnard] is hereby voided retroactively."

The new judgments of December 23, 2014, and March 6, 2015, based on new evidence presented by Appellant, found him partially disabled and appointed Barnard, his wife, a limited conservator whose sole duty and power was to forbid and not permit any sale of Appellant's real property.

The probate court's judgments leave Appellant with the right to make all of his own decisions with regard to his handling of his finances and business affairs, conducting transactions with regard to his personal property, running his substantial farm, and talking care of his medical and personal needs, independently and autonomously and without the input of Barnard or

9

approval of the court. However, with regard to the very limited area of real property, the court finds him mentally unfit to sell, transfer or convert it. This finding is against the weight of the evidence.

The record shows the original Petitioners in this case seeking Appellant to be declared mentally unfit and for themselves to be appointed conservators over Appellant's assets were the very individuals who initially took advantage of Appellant's trusting nature, not mental incapacity. This case was borne from and sustained by the suspected undue influence of Barnard over Appellant, mainly because of their 30-year age difference, and the fact Petitioners were able to manipulate Appellant on a land transaction, sought to declare him incompetent so they could assume control over his finances, then completely abandoned their petition and deserted the proceedings they instigated.

By the end of this litigation and the court's final judgments, it was Barnard, Appellant's wife, who was appointed by the court as sole conservator. Appellant rejected Daughter as a candidate for his conservatorship in favor of Barnard, his wife, a choice which the court respected and honored. The court found Appellant to be mentally fit with regard to all other matters of finance and business, no matter how sophisticated or complex they may be, yet unfit with regard to one category of his belongings, real property. However, the testimony of both Hamlin and Dr. Harden weigh heavily in favor of Appellant's mental fitness in this regard.

The probate court's judgments of December 23, 2014 and March 6, 2015 are against the weight of the evidence. The record is devoid of clear and convincing evidence to support the probate court's finding Appellant is partially disabled and in need of a conservatorship with regard to his real property. For these reasons, Appellant's point on appeal is granted.

10

## Conclusion

The probate court's judgments are reversed.

_Sherri B. Sullivan_
SHERRI B. SULLIVAN, P.J.

Kurt S. Odenwald, J., and
Lisa P. Page, J., concur.

11