KURT S. ODENWALD, Judge
Introduction *627 Jesse C. Hammock, II ("Hammock") appeals from the probate court's order denying his claim against the estate of Warren K. Miller ("the Estate"). Hammock filed a claim against the Estate for $9000, seeking remuneration for his performance of four concerts. In his sole point on appeal, Hammock contends that the probate court misapplied the law because the undisputed facts establish his right to recover on his account-stated claim. Because Hammock's claim is not based upon a prior debtor-creditor relationship between him and Warren Miller, we reject Hammock's claim and affirm the probate court's ruling.
Factual and Procedural History
In early 2016, Warren K, Miller ("Decedent") hired Hammock, a musician, to perform four shows scheduled for May 21, June 26, September 17, and October 8.[1] Hammock and Decedent were friends, and Hammock had previously put on shows for Decedent. Hammock performed both individually and as a member of his band, Powder Mill. Decedent paid Hammock $3000 as a total cash deposit for the May 21, September 17, and October 8 shows. As a deposit for the June 26 show, Decedent issued Hammock a check for $2000.
On May 15, almost a week before the first show, Decedent sent Hammock a text message, stating that "I still owe ya $2K cash for 5/21. If ya need it before next weekend, just let me know." Decedent sent Hammock a second text message: "Also, after deposits I still owe you the following: 6/26 Mill @ $3K, 9/17 JCH2 @ $1K, & 10/8 Mill @ $3K. Let me know if that jives with your book."[2] Hammock responded affirmatively. The text messages were consistent with previous discussions between Hammock and Decedent regarding the negotiated price for each respective show.
On May 17, two days after the text-message conversation, Decedent died unexpectedly. Hammock learned of Decedent's death shortly thereafter. Hammock performed the May 21 and June 26 shows as planned, notwithstanding Decedent's death or the efforts of Patrice Miller ("Miller"), Decedent's widow, to cancel each performance. The probate court later appointed Miller as the personal representative of the Estate. Miller obtained an ex parte order against Hammock.
Regarding the September 17 show, Hammock allegedly arrived at the venue and learned that a different musician had replaced him. Hammock did not perform on September 17. The ex parte order obtained by Miller prevented Hammock from putting on the October 8 show at the planned venue, which was located on Decedent's property. Hammock instead played at a nearby venue. Hammock purportedly paid, inter alia , his band, travel costs, and a production company for all four scheduled engagements. Hammock could not recall if he ever received any of the deposits.
Hammock later filed a claim against the Estate seeking $9000 in compensation for the four concerts. Miller, in her capacity as personal representative of the Estate, objected. After a hearing, the probate court denied Hammock's claim. This appeal follows.
*628 Standard of Review
We affirm the court's decision, as in any court-tried probate case, unless there is no substantial evidence to support the decision, it is against the weight of the evidence, the court erroneously declares the law, or the court erroneously applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976) ; In re Barnard, 484 S.W.3d 833, 837 (Mo. App. E.D. 2016) ; Miller v. Swearingen (In the Estate of Spray), 77 S.W.3d 25, 26 (Mo. App. E.D. 2002).
Point on Appeal
In his sole point on appeal, Hammock contends that the probate court misapplied the law because the undisputed facts establish his right to recover on his account-stated claim.
Discussion
Hammock argues that the text-message conversation between him and Decedent on May 15 conclusively demonstrates his right to recover $9000 on the theory of account stated. We disagree.
"An account stated is an agreement between parties, having had previous financial transactions, that a balance struck is correct and due between them, and a promise by the debtor, either express or implied, to pay the balance." Scheck Indus. Corp. v. Tarlton Corp., 435 S.W.3d 705, 721-22 (Mo. App. E.D. 2014) (quoting Grant Selsor & Sons Lumber Co. v. Wood, 872 S.W.2d 150, 153 (Mo. App. S.D. 1994) ). To establish a claim for account stated, the claimant must prove that "(1) the parties had prior financial dealings, an open account; (2) the parties reached an agreement as to the amount due and owing on that account; and (3) the debtor acknowledged this obligation and made an unconditional promise to pay." Id. at 722 (quoting Grant Selsor & Sons Lumber Co., 872 S.W.2d at 153 ).
Importantly, a claim premised on the theory of account stated must be predicated on some prior transaction that created a debt due from one party to the other. Whelan's, Inc. v. Bob Eldridge Constr. Co., 668 S.W.2d 244, 247 (Mo. App. W.D. 1984) ; Gerstner v. Lithocraft Studios, Inc., 258 S.W.2d 250, 253 (Mo. App. St. Louis 1953) ; see PJ's Concrete Constr., Inc. v. Gust, 983 S.W.2d 640, 642 (Mo. App. S.D. 1999). To that end, the claimant must establish the existence of an antecedent debtor-creditor relationship between the parties at issue, arising before the purported statement of account. See Crist Sod Co. v. Bruce, 599 S.W.2d 43, 45 (Mo. App. E.D. 1980) ; Barr v. Lake, 126 S.W. 755, 757 (Mo. App. St. Louis 1910). More specifically, an account-stated claim requires that a debt exists and is due and owing at the time the debtor acknowledges the debt and unconditionally promises to pay it. See Jose v. Aufderheide, 293 S.W. 476, 479 (Mo. App. Kansas City 1926) (describing that "[a]n account stated must be founded on previous transactions[;] ... the admission of indebtedness must refer to a past transaction or subsisting debt. An account stated cannot be made the instrument to create an original liability; it merely determines the amount of the debt where liability previously existed."); Fisse v. Blanke, 105 S.W. 689, 692 (Mo. App. St. Louis 1907).
In acknowledging the preexisting debt, the debtor must additionally recognize a fixed and certain sum to be due. McKenzie v. Hall, 239 S.W. 154, 157 (Mo. App. Kansas City 1922) ; see also Brader v. Rehm, 323 S.W.2d 392, 394 (Mo. App. St. Louis 1959) (stating that an action for account stated is not available where there are certain matters remaining open for future adjustment); Concrete, Inc. v. Curry, 278 S.W.2d 6, 9 (Mo. App. St. Louis 1955) (same). Therefore, the debtor's acknowledgment of liability and agreement *629 to pay a debt then owed may not be contingent on future events. See Scheck Indus. Corp., 435 S.W.3d at 722-23 ; Grant Selsor & Sons Lumber Co., 872 S.W.2d at 154 ; Spartan Carpet Distribs., Inc. v. Bailey, 728 S.W.2d 236, 237 (Mo. App. E.D. 1987).
Hammock's proffered evidence fails to satisfy the necessary components of an account-stated cause of action. The record does not reveal facts allowing the probate court to find the required prior transactions creating a debtor-creditor relationship between Hammock and Decedent. See Crist Sod Co., 599 S.W.2d at 45 ; Barr, 126 S.W. at 757. And the existence of such prior transactions is critical to proving a claim for an account-stated. Here, the record shows that Decedent's text messages merely restated an agreement to be performed in the future with Hammock; Decedent agreed to pay $9000, after a deposit of $5000, for Hammock to perform four specific concerts scheduled for later in the year. The text-message conversation clarified the parties' agreement to exchange future services for money paid at a later date. Critically, no payment was due, owing, or contested at the time of Decedent's text messages. As of May 15, the parties had not exchanged any goods or services besides the deposit, and the parties were not yet required to perform any obligations under the agreement. Indeed, Hammock presented no evidence that the $9000 referenced in the text messages related to any shows performed before May 15. As a result, Decedent's text messages could not constitute a settlement or an account on any existing debt.
Nor does the record establish that Decedent's text messages acknowledged his absolute liability on, and an unconditional promise to pay off, a debt then owed. See McKenzie, 239 S.W. at 157. Decedent's agreement to pay $9000 in the future was not absolute, fixed, or certain. Instead, the parties predicated the agreement on, inter alia , Hammock's satisfactory and timely future performances. Decedent sent the text messages on May 15, before Hammock performed any of the musical events at issue. If Hammock failed to perform the agreed-upon services, or if certain conditions arose preventing the parties' ability to perform, Decedent could adjust the planned payments accordingly. Thus, Decedent's text messages do not represent his final reflection on any payment owed between the parties or his liability on the agreement. Simply, Hammock does not show that Decedent's text messages were a final resolution of any purported "account."
Clearly, not all written statements describing the payments planned between parties will create an account-stated cause of action. See Fisse, 105 S.W. at 692. The record reveals that the parties entered into an agreement for the performance of future services in exchange for future payment. While the agreement between the parties may give rise to an action against Decedent for not performing the promise when the obligation was later due, Decedent's text messages were not in the nature of settling any existing debt that was then due from one party to the other. See id. Hammock's arguments otherwise impermissibly attempt to broaden account stated as a cause of action.
Hammock's proposed evidence fails to satisfy the requirements of an account-stated claim. Accordingly, Hammock cannot demonstrate that the probate court erred in denying his claim against the Estate. Hammock's sole point on appeal is denied.[3]
*630 Conclusion
The judgment of the probate court is affirmed.
Robert G. Dowd, Jr., P.J., concurs.
Sherri S. Sullivan, J., concurs.

All dates referenced here occurred in 2016, so we will omit the year in the remainder of the opinion.

Hammock testified that "Mill" referred to performances planned for Hammock's entire band, Powder Mill, while "JCH2" signified performances designated for Hammock individually or as a part of a smaller ensemble.

We emphasize that the only issue on appeal is whether the probate court misapplied the law regarding Hammock's contention that the undisputed facts establish his right to recover on his account-stated claim. We need not, and do not, address whether the record entitles Hammock to recover on any other theory or basis.