WHELAN'S, INC., Plaintiff,

v.

The BOB ELDRIDGE CONSTRUCTION CO., INC., Defendant-Appellant,

v.

WELLS FARGO GUARD SERVICES, A DIVISION OF BAKER PROTECTIVE SERVICES, INC., Defendant-Respondent.

No. WD 34297.

Missouri Court of Appeals, Western District.

March 20, 1984.

Ronald K. Barker, Arnold R. Day, Margolin & Kirwin, Kansas City, for defendant-appellant.

Stephen B. Strayer, Kansas City, for defendant-respondent.

Before SOMERVILLE, P.J., and CLARK and BERREY, JJ.

CLARK, Judge.

In this action on an alleged account for services rendered by respondent, a bench trial resulted in a judgment against appellant for $10,624.00 and interest. The ap-

peal contends the proof failed to establish the existence of an account for which appellant was obligated. Reversed.

In 1977, a multi-story structure known as the Granada Royale Hometel was being erected by appellant as general contractor. The owner, with whom appellant had contracted the job, was Granada Royale of Missouri, Inc. One Robert E. Woolley, apparently a resident of Phoenix, Arizona, was president of that corporation and also of Hometels of America and Precision Mechanical, a Phoenix company. The owner's representative on the construction job in Kansas City was Edward Spaulding. Woolley had sent Spaulding to Kansas City to oversee the work and look out for the owner's interests. Spaulding was an employee of Precision Mechanical but was answerable directly to Woolley for the Granada project.

Respondent was engaged by Spaulding in July, 1977 to furnish guard services at the Granada Royale construction site. This was done because the owner was concerned about security and felt there should be twenty-four hour protection when work was not actually under way. Respondent's branch manager at the time was Ralph Pussey. The arrangements for the nature and extent of patrol services and the amount to be charged were settled by agreement between Spaulding and Pussey.

According to respondent's books, the account for the guard services was initiated indicating the customer to be Granada Royale Hometel. Billing invoices between the dates July 29, 1977 and October 19, 1977 were sent to Granada Royale Hotel, Attn: Ed Spaulding. Invoices thereafter were addressed to appellant. Of the latter, billings for the weeks of October 23, October 30, November 6 and December 11, 1977 were paid to respondent by appellant. Unpaid invoices included some addressed to Granada Royale Hotel and some addressed to appellant before, during and subsequent to the periods for which invoices were paid. Funds appellant used to pay the guard service invoices which were paid were obtained by appellant from respondent's construction lender on submission of lien waivers signed by respondent.

The claim of respondent for its unpaid charges was first lodged as a mechanic's lien claim against St. Luke's Hospital, the owner of the land, Granada Royale of Missouri, Inc. and Granada Royale Hometel-Kansas City, a limited partnership and lessee of the facility. That claim was dismissed by the court on the basis it was not a lienable item. Thereafter, respondent amended its pleading to assert a cause of action on contract and account and added appellant as a defendant. The petition on which the cause was tried alleged in substance that the defendants (St. Luke's Hospital, Granada Royale of Missouri, Inc., Granada Royale Hometel-Kansas City and the Bob Eldridge Construction Company, Inc.) "are justly and duly indebted to this Defendant (respondent here) in the sum of * * * $10,624.00 for certain work, labor and materials furnished by this Defendant at the special insistance (sic) and request of and under contract with the said Defendants * * *."

On motion at the close of the evidence, St. Luke's and Granada Royale Hometel-Kansas City were dismissed. The court found the issues in favor of Granada Royale of Missouri, Inc. and against respondent. As to the claim against appellant, the court found in favor of respondent and entered the judgment set out above. In its formal entry, the court made no findings of fact or conclusions of law, but by recorded comments of the judge when he orally pronounced judgment from the bench, it is evident that he perceived the cause as one for an account stated.

The questions of what legal theories were pursued by respondent below and what basis was adopted by the court in entering judgment for respondent are, to say the least, clouded. Respondent in its brief here asserts it did not set out to plead an account stated and did not try the case on that theory. Instead, respondent says it pleaded and proved an "open and continuous running account." When the court announced judgment from the bench for

respondent, it stated: "The defendant * * appears to think that the case must rise or fall on an express promise to pay and a refusal to pay. * * * The only elements as I understand it that are necessary under an account stated, would be partial payment which we have in this case and a billing without payment, and the passage of an unreasonable amount of time without a specific refusal to pay. Those appears (sic) to be the two elements."

The formal judgment entry which followed and which was prepared by counsel for respondent recited only a finding of the issues for respondent and against appellant and set out no conclusions of law. Thereafter, in an apparent effort to conform the case to the theory espoused by the court, respondent moved to amend the petition to allege an account stated between the parties as the issue tried by express or implied consent. Inexplicably, the trial court overruled the motion.

Appellant here contends respondent made no case on account under any theory because respondent's own evidence proved the guard services were engaged by Spaulding, an employee of Granada Royale of Missouri, Inc. and the obligation for payment of the account was never assumed by appellant.

■ Much of the argument in the case here disputes whether the trial court's pronouncements from the bench commit respondent to the theory of an account stated or whether the absence of any conclusions of law from the formal judgment nullifies the trial judge's remarks. While appellate review would be materially assisted if the trial court and the parties were in agreement on the theory of the case, it is unnecessary to disposition here that the issue be resolved. In a bench tried case, the judgment is entitled to affirmance if it is correct under any reasonable theory supported by the evidence. *Western Casualty & Surety Co. v. Kohm*, 638 S.W.2d 798 (Mo.App.1982). The task, therefore, is to examine possible theories for a recovery by respondent consistent with the evidence and a broad construction of respondent's petition.

■ The theory of an "account stated" is obviously the first subject for discussion. An account stated results when parties to an open account reach an agreement as to the totality of the transaction between them. One essential element of an account stated is an agreement by both parties that the amount set forth in the account is correct and is understood as a final adjustment or statement. *Perbal v. Dazor Manufacturing Corp.*, 436 S.W.2d 677, 684 (Mo.1968). An account stated is created when parties who have had financial transactions between them arrive at a balance due and the party debtor acknowledges his obligation and promises to pay. *Urban Painting & Dry Wall Co. v. Sander*, 446 S.W.2d 500 (Mo.App.1969). An account stated must be predicated on some prior transaction and the consideration to support it is the consideration for the original debt. *Gerstner v. Lithocraft Studios*, 258 S.W.2d 250, 253 (Mo.App.1953).

■ The failure of proof of an account stated in this case is twofold. First, there was no prior transaction between the parties which gave rise to any account at all. The evidence was uncontroverted that the owner, Granada Royale of Missouri, Inc. was concerned about possible loss or damage when the site was not occupied by the construction crews. The owner's employee, Spaulding, hired the guard service, specified the work to be done and agreed on the price to be paid. Initial invoices for the service were sent to the owner and the account on respondent's books was in the owner's name. Moreover, the construction contract between appellant and respondent placed no obligation on appellant to guard the construction site.

Secondly, there was no proof any balance was struck or that appellant agreed to any particular amount or promised to pay any sum. To the contrary, respondent's statements were rendered weekly and merely accumulated an increasing unpaid balance as time went by. We agree with the statement by the trial court that the proof

showed only a partial payment and subsequent billings which were unpaid. Essential components of an account stated, a prior financial transaction and the subsequent agreement of the parties settling on the account balance, are lacking in this case.

Respondent relies primarily on the evidence showing some statements were paid by appellant, lien waivers recited that respondent was employed by appellant and testimony by Helen Bowles, secretary, treasurer and office manager for appellant that she did not inform respondent the invoices would not be paid. Instead, Mrs. Bowles told respondent payment would be forthcoming upon approval by the owner, Granada Royale of Missouri, Inc. and upon collection of the funds. This proof, however, makes no case under any of the account theories suggested.

Emphasis in this case was apparently placed on the fact that appellant continued to receive respondent's invoices periodically throughout the time the guard service was being rendered but no protest or disclaimer of responsibility was voiced. The trial judge cited *Chisler v. Staats*, 502 S.W.2d 424 (Mo.App.1973) as authority for the proposition that appellant's conduct permitted the inference of appellant's agreement to pay the balance each invoice disclosed. Respondent joins in the contention that absence of indication by appellant to the contrary fixes liability on appellant for the account.

The *Chisler* case is not in point because the facts are materially different. There, Chisler had been hired by Staats to drill a water well for service to Staats' home. A deposit and three partial payments on Chisler's bill were made by Staats, the partial payments being subsequent to completion of the work and the rendition of Chisler's final statement for services. The court held partial payments by Staats and his failure to object to the amount appearing on the billings during a period of six months raised a rebuttable presumption there had been an account stated.

The essential difference between the *Chisler* case and the present case lies in the original transaction between the parties. In the cited case, there never was any question that a debtor-creditor relationship was created between Staats and Chisler when Staats hired Chisler to drill the well. The only question was the amount owed. When Chisler rendered his statement and Staats made payments on the account during a period of six months without expressing any disagreement, the inference of a settled amount was a natural consequence. In the subject case, however, appellant owed no debt to respondent prior to transmittal of respondent's invoices. The inference of agreement therefore fails for want of any prior transaction out of which the presumption could arise.

This case is remarkably similar to *Crist Sod Co., Inc. v. Bruce*, 599 S.W.2d 43 (Mo. App.1980). There, Crist was a subcontractor under and was hired by the general contractor, Construction Associates. Bruce was the project owner. When Crist was not paid for his work, he billed Bruce, a partnership consisting of Bill Bruce and Donald Ham. In conversations between Crist and Ham, the latter did not deny the existence of the bills and did not refuse to pay but promised to pay when he could. The theory of Crist's case was an account stated. In its opinion, the court reversed the judgment for Crist on the ground that Crist had failed to prove two elements of its cause of action, a prior transaction between the parties and an agreement between the parties as to the account stated. The same rule denies recovery here to respondent under a theory of account stated.

■ Other possible theories to support the judgment do not pass muster under the evidence. It is not tenable to suggest that Spaulding was acting for appellant when the guard service was engaged. Spaulding did not purport to be so acting and respondent offered no evidence that the transaction was understood to be one initially involving appellant. The nature of the relationship between the project owner and the general contractor is wholly inconsistent

with the existence of any agency whereby Spaulding could have bound appellant to the undertaking. *Jeff-Cole Quarries, Inc. v. Bell,* 454 S.W.2d 5, 14 (Mo.1970).

█ Finally, if respondent's case be considered as merely a suit on an open account, as respondent's brief asserts, the proof is equally deficient. Respondent appears to contend that the obligation to pay the account arose because appellant accepted the benefits of respondent's services and ratified and adopted the acts of Spaulding by paying some of the invoices and by retaining the subsequent invoices without protest. Respondent cites *Linwood State Bank v. Lientz,* 413 S.W.2d 248 (Mo.1967) for the proposition that no act of the board of directors of appellant was required to validate what was done by Mrs. Bowles.

Even granting to the evidence recounted earlier in this opinion the generous inferences respondent advocates, the fact remains that appellant received no benefit from respondent's services in a legal sense.

█ The construction contract with Granada Royale of Missouri, Inc. did not obligate appellant to provide patrol guard service at the construction site. Respondent's services were engaged by the project owner, not by appellant, and therefore appellant was not a party to the transaction when invoices were first submitted. If, in fact, appellant did assume the obligation of paying for the service thereafter, the undertaking was necessarily gratuitous. Respondent has neither pleaded nor proved any consideration to appellant from that agreement or any detriment suffered by respondent. The burden of pleading and proving consideration was on respondent. *Ennis v. McLaggan,* 608 S.W.2d 557, 561 (Mo.App.1980). Respondent failed to make even a colorable showing of consideration.

The judgment is erroneous and it is reversed. The cause is remanded with direction that judgment be entered for appellant.

All concur.