GRANT SELSOR & SONS LUMBER COMPANY, INC., a Missouri corporation, Appellant,

v.

Tom L. WOOD, Respondent.

No. 18630.

Missouri Court of Appeals, Southern District, Division Two.

March 15, 1994.

Robert J. Selsor, Suelthaus & Kaplan, P.C., St. Louis, for appellant.

No appearance for respondent.

CROW, Judge.

Plaintiff, Grant Selsor & Sons Lumber Company, Inc., sued Defendant, Tom L. Wood, alleging he ordered 10,000 pieces of lumber from Plaintiff, specially cut to specific dimensions, at an agreed price of $9,602; that Plaintiff "shipped a majority of the order to Defendant" and later notified him that the remaining portion "was ready for delivery at his direction"; that Defendant, although promising to "send a check," never paid anything.

Defendant counterclaimed, alleging the lumber received from Plaintiff "was nonconforming as to the specifications agreed upon"; that he incurred expenses in reworking it in an effort to make it conform, plus expenses for storing it, for replacement lumber and freight; that these expenses totaled $18,747.

The trial court heard the case without a jury and entered judgment for $2,400 for Plaintiff on its claim and $7,660 for Defendant on his counterclaim, resulting in a "net judgment" for Defendant of $5,260.

Plaintiff appeals. The first of its two points relied on reads:

"The [trial] court erred as a matter of law in finding for Defendant because the uncontroverted evidence demonstrated that Defendant had repeatedly and unconditionally agreed to pay for the goods over a period of several months, despite his admitted knowledge of the alleged defects in the goods from the earliest delivery, thus giving rise to an account stated. Defendant is similarly equitably estopped to deny the account stated or to assert his counterclaim in the circumstances."

Our review is governed by Rule 73.01(c) [1] and *Murphy v. Carron*, 536 S.W.2d

---

1. Rule references are to Missouri Rules of Civil Procedure (1994).

30 (Mo. banc 1976). The trial court's judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. 536 S.W.2d at 32[1]. Credibility of the witnesses and the weight to be given their testimony was a matter for the trial court, which was free to believe none, part, or all of the testimony of any witness. *Herbert v. Harl*, 757 S.W.2d 585, 587[1] (Mo. banc 1988). Accordingly, in determining the sufficiency of the evidence, we accept as true the evidence and inferences from it favorable to the judgment and disregard contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654[2] (Mo. banc 1989).

So viewed, the evidence established that Defendant, whose business is manufacturing and distributing wooden stair parts, ordered the lumber for the purpose of turning it into balusters.[2] That task was to be performed by Moon Woodturning Company at Pacific, Missouri, a subcontractor of Defendant. Defendant had a contract to sell 9,000 of the balusters to Gerber Industries of St. Peters, Missouri. The other 1,000 were going into Defendant's inventory.

Defendant ordered the 10,000 pieces in person at Plaintiff's place of business in Springfield, Missouri. He dealt with Harvey "Pat" Patterson, an employee of Plaintiff. Samuel Moon of Moon Woodturning Company was present when Defendant placed the order.

A portion of the order—estimated by Samuel Moon as 2,000 or 3,000 pieces, and by Defendant as 1,200 pieces—was thereafter delivered to Moon Woodturning. Samuel Moon determined that the pieces did not conform with the specifications. Moon explained: "[They] had checks, some bows, some wains, knots. They weren't uniform in size." Moon reported this to Defendant by phone.

Defendant immediately phoned Plaintiff's employee, Patterson, who asked whether Defendant could make the pieces conform. Defendant replied he could try. Patterson told

Defendant to "do whatever was necessary to make the goods conforming." Defendant so instructed Samuel Moon.

Moon waited until the next shipment arrived, a week or two later. That shipment, approximately 4,000 to 5,000 pieces, had the same flaws as the first shipment. Moon notified Defendant of this by phone.

Defendant again called Patterson. According to Defendant, Patterson said: "Go ahead and try to make it conforming. Do whatever is necessary to try to make the material useful." Defendant told Samuel Moon to do so.

Moon did his best, but Gerber Industries rejected the balusters because they "didn't conform to the specifications."

Defendant then ordered lumber from another supplier, Glen Oak Lumber & Milling, Inc., a Wisconsin company, to fill the Gerber order. Moon Woodturning made balusters from it, acceptable to Gerber. Defendant paid Glen Oak and Moon Woodturning, plus freight charges for hauling the lumber from the former to the latter.

In support of its theory that the evidence demonstrated an account stated (inferably for $9,602), Plaintiff relies on testimony of its president, Irvin Selsor. However, as noted *supra*, the trial court was not obliged to believe that testimony, *Herbert*, 757 S.W.2d at 587[1], and inasmuch as it is contrary to the trial court's judgment, we disregard it. *T.B.G.*, 772 S.W.2d at 654[2].

Plaintiff also relies on testimony by Defendant, both at trial and on deposition, to support the "account stated" theory. Defendant's testimony at trial included this:

"Q. You had phone conferences with Bob Selsor and Irvin Selsor about the payment on this account; haven't you?

A. I have received phone calls from them.

Q. Okay. You spoke with them on the phone. You told both of them that you'd send them a check.

A. Correct.

Q. And you didn't tell them—at least on those occasions when you said you'd

2. According to Defendant, a baluster "is the spin-

dle that sits beneath the handrail on a staircase."

send them a check and you'd pay for it, you didn't tell them that there was any problem with timeliness and you didn't tell them that there was any problem with conformity. Is that correct?

A. I had to—That is correct."

Defendant's deposition, taken April 20, 1991, included this:

"Q. Do you remember receiving a telephone call from me?

A. Yes, I do.

Q. Do you recall what was discussed during our conversation?

A. You'd asked me about the invoice due, if I remember correctly.

Q. Do you recall my asking you when we could expect payment for the order?

A. Uh-huh. (Witness moves head up and down.)

Q. What was your response?

A. My response was you'd be receiving a check within the next week to ten days. But at that point, also, I was still expecting conformity of the order.

Q. Did you communicate to me that there was a defect in the goods? ... At that time.

A. Not to the best of my recollection, I didn't.

Q. Did you use the words that you were expecting conformity of the order when you talked with me?

A. Not that I recall. You were calling about when you would receive money. I was answering your question at that point."

■ An account stated is an agreement between parties, having had previous financial transactions, that a balance struck is correct and due between them, and a promise by the debtor, either express or implied, to pay the balance. *Ozark Mountain Timber Products, Inc. v. Redus*, 725 S.W.2d 640, 648[5] (Mo.App.S.D.1987); *Chisler v. Staats*, 502 S.W.2d 424, 426[1] (Mo.App.1973). To establish a cause of action in account stated, the party seeking to recover must prove: (1) the parties had prior financial dealings, an open account; (2) the parties reached an agreement as to the amount due and owing

on that account; and (3) the debtor acknowledged this obligation and made an unconditional promise to pay. *Spartan Carpet Distributors, Inc. v. Bailey*, 728 S.W.2d 236, 236[1] (Mo.App.E.D.1987).

Here, Defendant testified:

"Q. ... at the time you talked to the Selsors, [Plaintiff's lawyer] asked you if you mentioned any problem with the material to them; and you didn't mention any problem with the material to them. But that was after you talked to Pat Patterson; wasn't it?

A. Yes, it was.

Q. And that was after Pat Patterson had told you not once but twice, 'Do whatever you had to do to make the material conforming'; isn't that right?

A. That's correct.

Q. And you were relying upon the ability of Mr. Moon and the word of Mr. Patterson as an employee and agent of Selsor Lumber Company to correct the problem?

A. Correct.

Q. ... Did you know at the time you talked to the Selsors that it was ultimately going to be necessary to go out and buy $13,000 worth of material from [Glen] Oak Lumber Company to replace the material Selsor had sold to you?

A. No.

Q. If you'd have known that at the time you talked to the Selsors, what would you have told them?

A. Well, at the time we were still trying to work and make the product usable. I had no idea what my cost was going to be into it. They can invoice me all they want. They could invoice me the $10,000. But until I know what my cost is going to be per Pat Patterson and my conversation, then I had no idea until I had that total together how much it was going to be.

Q. Okay.

A. That then needs to be deducted (inaudible)."

■ Plaintiff does not cite anyplace where the record shows Defendant agreed with Plaintiff that he owed $9,602 and made an

unconditional promise to pay that sum. Viewed favorably to Defendant, all the evidence shows is that when the Selsors asked Defendant about payment for the lumber, he said he would send a check. When those conversations took place, Defendant knew the lumber received from Plaintiff did not conform with the specifications, but he did not know what his cost would be for reworking it to make it conform or, if that failed, what replacement lumber would cost.

Defendant told Plaintiff's employee, Patterson, that the lumber in both shipments did not meet the specifications. Generally, notice to or knowledge of an agent, while acting within the scope of authority and with regard to any business over which his authority reaches, is notice to or knowledge of the principal. *Eveready Heating & Sheet Metal, Inc. v. D.H. Overmyer, Inc.*, 476 S.W.2d 153, 155[4] (Mo.App.1972).

Plaintiff's president, Irvin Selsor, explained that Patterson's duties included waiting on customers, "getting the orders out," accepting orders (including special orders) from customers, negotiating terms, and writing tickets. Inasmuch as Patterson had that authority, we hold the knowledge he acquired from Defendant regarding nonconformity of the lumber was imputed to Plaintiff. Consequently, when Defendant told the Selsors he would send a check, Plaintiff was charged with knowledge that the lumber did not meet the specifications and efforts to make it conform might not succeed.

In the above respect, this case is identical to *Spartan Carpet*, 728 S.W.2d 236, where a carpet seller sued the buyer on a theory of account stated. The buyer admitted there was an open account on which he owed $2,889.63, which he promised to pay in full in three days. Thereafter, he refused to pay. The trial court found for the buyer. On appeal, the Eastern District of this Court held:

"What was in dispute is whether the promise to pay was conditioned upon seller's responding to buyer's complaints about defects in the carpeting. If buyer's acknowl-

edgement of the debt was contingent, an account stated was not formed."

*Id.* at 237 [citations omitted].

Viewing the evidence favorably to the judgment, the Eastern District concluded the trial court could have found the buyer's promise to pay the amount owed on the account was contingent upon the seller resolving the problems associated with the carpet. *Id.* The opinion continued:

"The [trial] court could also have found buyer communicated this condition to seller. Finding a conditional agreement to pay the court could not find an account stated and could not render judgment for seller." *Id.*

The evidence in the instant case, viewed favorably to the trial court's judgment, is sufficient to support a finding that Defendant's promise to send a check was contingent upon success in making the lumber from Plaintiff conform to the specifications, and that Defendant would receive credit for the cost of doing so against the purchase price.

Plaintiff attempts to liken this case to *Ozark Mountain Timber Products*, 725 S.W.2d 640. Plaintiff fails to recognize the significant factual differences between the two.

In *Ozark Mountain Timber Products*, a lumber processor performed kiln drying and surfacing procedures on lumber for a customer. The customer would pay for the services when he picked up the lumber. The customer picked up two loads, giving checks for $2,669.55 and $3,400.00, respectively. He later picked up a third load, for which the charge was $4,790.15. He promised to bring a check for it the next day, but never did. The checks for the first two loads were returned unpaid by the drawee. There was no contention that anything was wrong with any of the lumber in any of the three loads. The trial court awarded the lumber processor $4,790.15 for the third load, and this Court upheld that award on the theory of account stated. The trial court awarded the lumber processor the sum of the two dishonored checks in a separate count.

Here, Defendant never tendered a check to Plaintiff in any amount and never agreed he owed any specific sum. Plaintiff's reliance on *Ozark Mountain Timber Products* is misplaced.

We hold the evidence, viewed favorably to the judgment, does not compel a finding that there was an account stated between Plaintiff and Defendant in the amount of $9,602, the sum claimed by Plaintiff, or any other amount. Plaintiff's contention that the evidence demonstrated an account stated is without merit.

Plaintiff's first point also maintains Defendant is equitably estopped to deny the account stated or to assert his counterclaim. The point does not explain why this is so.

Endeavoring to divine the basis for that contention from the argument following it, we note Plaintiff cites testimony by Defendant that he asked Plaintiff to complete the order after receiving the first 6,000 pieces. Plaintiff also directs us to testimony by Defendant that he went to Plaintiff's place of business and looked at "two pieces off the top" of a pallet of 1,000 to 1,500 pieces. Defendant told Irvin Selsor he "thought they looked fine."

As we understand Plaintiff, its hypothesis is that the evidence in the preceding paragraph calls for application of the doctrine of equitable estoppel whereby Defendant is foreclosed "from denying his own expressed or implied admissions which have in good faith and in pursuit of its purpose been accepted and relied upon by [Plaintiff]."

We disagree. Defendant's request that Plaintiff complete the order after the first two shipments arrived at Moon Woodturning is not inconsistent with Defendant's contention that those two shipments did not meet the specifications. Defendant had notified Plaintiff's employee, Patterson, of the nonconformity. Defendant needed the remainder of the order from Plaintiff to fulfill his contract with Gerber Industries. Having pointed out the deficiencies in the first two shipments to Patterson, Defendant could reasonably hope the next shipment would meet the specifications.

Defendant's expression of satisfaction with two pieces from a pallet of 1,000 to 1,500 is not fatal to his contention that there was widespread nonconformity in the 6,000 pieces which made up the first two shipments. At most, it bears on the credibility of his evidence, an issue for the trial court, not us.

Plaintiff's first point is denied.

Its second point reads:

"Even if Defendant was dealing with Plaintiff's employee while at the same time representing to Plaintiff's officers that production and delivery were proceeding smoothly, Defendant should not be allowed to seek refuge in the doctrine of apparent authority where it cannot be said that the Defendant relied upon the employee's alleged representations in good faith and in the exercise of reasonable prudence under these facts."

This point arguably violates the "wherein and why" requirement of Rule 84.04(d). *See: Thummel v. King,* 570 S.W.2d 679, 684–87 (Mo. banc 1978). That may be why we are uncertain of the theory on which the point attacks the judgment.

Plaintiff may be contending the record cannot support a finding that Defendant, in good faith and in the exercise of reasonable prudence, believed Patterson was authorized to receive Defendant's complaints about the first two shipments and to tell Defendant, on Plaintiff's behalf, to try to make those shipments conform to the specifications. If that is the import of the point, it is without merit.

Where a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform on behalf of his principal a particular act, such particular act having been performed, the principal is estopped, as against such innocent third person, from denying the agent's authority to perform it. *State ex rel. Massman v. Bland,* 355 Mo. 17, 194 S.W.2d 42, 45–46[4] (banc 1946).

Defendant's evidence was that he placed the order with Patterson. Plaintiff's

president conceded Patterson's authority included accepting orders from customers and negotiating terms. The trial court could have reasonably found that a person of ordinary prudence, conversant with business usages and the nature of the lumber business, would be justified in presuming that Patterson was authorized to receive complaints about nonconforming lumber and resolve such complaints, at least to the extent shown here.

Plaintiff's second point is denied.

Judgment affirmed.

FLANIGAN, P.J., and PREWITT, J., concur.