

# Missouri Court of Appeals
## Southern District

### In Division

THAYER FARM CENTER/MEYER
FEED,

      Plaintiff-Respondent,

v.

DON BUSH, SR., JALONNE BUSH,
DON BUSH, JR., and SALLY BUSH,

      Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. SD37750
Filed:  October 30, 2024

APPEAL FROM THE CIRCUIT COURT OF OREGON COUNTY

Honorable Steven F. Lynxwiler, Special Judge

**REVERSED AND REMANDED WITH DIRECTIONS**

Don Bush, Sr.; Jalonne Bush; and Don Bush, Jr. (hereinafter referred to collectively as Defendants and individually as Don, Sr., Jalonne, and Don, Jr., respectively) appeal from a judgment against them in the amount of $61,520.66, plus interest, in a suit brought by Thayer Farm Center/Meyer Feed (hereinafter referred to as Thayer).[1]  On appeal, Defendants' second point asserts that Thayer's petition pleaded an "account stated" theory

---

[1] Because all Defendants share the same surname, we refer to each one individually by given name for purposes of clarity.  No familiarity or disrespect is intended.  Don, Jr.'s wife, Sally Bush, also was named as a defendant, but she was found not liable to Thayer at trial.  No one has appealed from that ruling.  Therefore, we do not refer to her as one of the defendants on appeal.  We refer to her by given name when appropriate for context.

of recovery, but the trial court entered judgment on an unpleaded "action on account" theory of recovery. Because this point has merit, we reverse the judgment. We remand with directions to enter judgment for Defendants and to assess court costs in their favor as the prevailing parties.

**Factual and Procedural History**

On January 9, 2018, Thayer filed its lawsuit against Defendants. The petition contained two counts.

Count I of the petition was directed to defendants Don, Sr. and Jalonne. In relevant part, Count I alleged:

> That on or about the 6th day of February, 2015, Defendants Don and Jalonne Bush entered into an agreement with [Thayer] to pay for certain goods and services.
>
> That the total balance now due for said goods and services so sold is Forty-Five Thousand, Nine Hundred Fifty and 35/100 Dollars ($45,950.35), and said amount is still due and unpaid.

Count II of the petition was directed to defendants Don, Jr. and Sally Bush. In relevant part, Count II alleged:

> That on or about the 6th day of February, 2015, Defendants Don Jr. and Sally Bush entered into an agreement with [Thayer] to pay for certain goods and services.
>
> That the total balance now due for said goods and services so sold is Forty-Five Thousand, Nine Hundred Fifty and 35/100 Dollars ($45,950.35), and said amount is still due and unpaid.

Defendants filed an answer denying these and other allegations in the petition.

A bench trial commenced on August 18, 2020, and all parties waived opening statements. Thayer's only witness was Roger Meyer (Meyer). Meyer testified that he

operated Thayer and had sold goods and products to Defendants.[2]  The following colloquy

then occurred:

> [Thayer's counsel]:  And so during the time period of 2005 through 2012, did the defendants request certain products be sold to them on credit from your business?
>
> A.  Yes, sir.
>
> [Defense counsel]:  Objection.  At this point, I'm going to object that that's beyond the scope of the pleadings.  The pleadings that [Thayer's counsel] has filed seeks a – stating that on the 6 day of February, 2015, Defendants Don and Jalonne Bush entered into an agreement with [Thayer] to pay for certain goods and services.  The period of time in which he is alleging that there was an agreement reached is 2015 forward to pay for certain goods and services.  I would also further object that the period of time that he has asked to discuss about would be outside the statute of limitations of five years, Judge.
>
> [Thayer's counsel]:  Judge, this is actually a suit on account.  Statute of limitations is 10 years and statute of limitations as an affirmative defense must be pleaded.  It is not pleaded in this action, so it cannot be raised now at trial as a defense.
>
> [Defense counsel]:  It's not pleaded, Judge, because he's alleged February 15, – or excuse me, 6 day of February, 2015.  I have to rely upon his pleadings regarding any affirmative defense.  Today is the first date, Judge, that we have had the discussion regarding any such documentation or invoices from a period of time from [2005] to 2012.

The trial court overruled the objection and granted defense counsel a continuing objection

to any testimony about charges prior to February 6, 2015.

---

[2]  Thayer was operated pursuant to a partnership between Meyer and his wife. Missouri adheres to the common-law aggregate theory of partnership, which means that a general partnership has no legal existence separate from its members.  *See **Unifund CCR Partners v. Kinnamon***, 384 S.W.3d 703, 705-06 (Mo. App. 2012).  This remained true after Missouri adopted the Uniform Partnership Law in RSMo Chapter 358.  ***Unifund CCR Partners***, 384 S.W.3d at 705-06.  Bringing suit in the name of Thayer, rather than in the individual names of Meyer and his wife, presented a capacity-to-sue issue, which was waived because it was not raised in a timely Rule 55.27(a) motion or in Defendants' answer.  ***Unifund CCR Partners***, 384 S.W.3d at 710; Rule 55.27(g)(1) Missouri Court Rules (2018).

Meyer identified Exhibit 1, which was a collection of handwritten invoices showing miscellaneous products purchased over the years. Meyer testified that the listed items were purchased by Defendants, who were "[b]asically, family."[3]

Exhibits 2, 3, 4 and 5 were a collection of handwritten invoices for "Circle B" from 2005-2008. With respect to Exhibits 2-5, Meyer testified that all of the invoices referenced Circle B at the top. According to Meyer, Circle B was the name of the farm operated by Don, Sr., Jalonne, and Don, Jr. Despite the name on the invoices, Meyer testified that the purchases were made by the individuals who came to get the feed at the time of the sales. Exhibits 2-5 were admitted over objection. The court acknowledged that it was taking all of defense counsel's objections with the case.

Meyer was next shown Exhibits 6-9, which were invoices for "Bub Ranch" from 2005-2010. Meyer testified that all of the feed and supplies were purchased by Defendants, who were family, even though the invoices said "Bub" or "Bub Ranch" on them. Exhibits 6-9 were admitted.

Meyer testified that the total charge on all of these tickets for feed purchases was $106,060.66. Defendants had paid $44,540, which left a balance of $61,520.66. The last payment occurred on February 1, 2015.

According to Meyer, he met with Defendants to discuss what was owed. Meyer testified that the "[m]eeting was basically[,] they'd pay off the feed bill if we signed off on the ranch." This was the only meeting Meyer had with Defendants on February 6, 2015. According to Meyer, "Don Senior told me he would pay the feed bill if, you know, [my

---

[3] Because Meyer is married to Holly, the daughter of Don, Sr. and Jalonne, all Defendants are Meyer's in-laws.

wife, Holly, and I would] sign off on that farm." Meyer testified that he believed there was $61,520 owed on the feed bill.

Meyer then identified Exhibit 10, which was a calculation of the balance due with accrued interest: a sum of $92,237.86. Exhibit 10 was admitted. During cross-examination, Meyer made the following admissions:

1. Don, Sr. never applied for credit with Thayer.

2. Don, Sr. never signed anything agreeing to pay for feed.

3. No invoice was signed by Don, Sr.

4. Jalonne never had an individual credit account set up for her.

5. She never signed a single ticket or signed anything agreeing to pay for any feed.

6. Don, Jr. never applied for credit at Thayer or signed a single invoice.

7. Don, Jr. never signed anything agreeing to pay for anything.

8. The meeting on February 6, 2015, took place at Thayer and only involved Don, Sr. and Meyer.

9. During that meeting, Meyer did not tell Don, Sr. the total amount owed.

10. Thayer had sent Don, Sr. a running account statement, which Don, Sr. signed on February 6, 2015, next to a handwritten notation stating "debt in dispute[.]"

On redirect examination, Thayer's counsel offered Exhibit 11, which was the running account statement. The trial court admitted the exhibit. Meyer also testified about a meeting at a residence on a different date involving Defendants, Meyer, and his wife, Holly. Meyer admitted that there was a discussion about the amount owed, but that Defendants did not agree to pay that sum.

After the close of Thayer's evidence, its counsel asked the trial court to take judicial notice of MAI pattern instruction 26.03, which outlines the elements for submitting an action on account to a jury.

During Defendants' case-in-chief, defense counsel called Don, Jr., Don, Sr., and Jalonne. The relevant testimony from each person is summarized below.

As an individual, Don, Jr. never set up a charge arrangement with Thayer. Don, Jr. had no conversation with any representative of Thayer on February 6, 2015, and never agreed to pay a feed bill in the amount of $45,950.35.

Don, Sr. never entered into an agreement with Thayer on February 6, 2015, to pay for goods or services in any amount. He never had any conversation with Meyer about that matter. He never personally entered into any agreement with Thayer to purchase feed on credit. He received the statement from Thayer marked as Exhibit 11. He signed the statement on February 6, 2015, with a notation stating "debt in dispute[.]" He sent the statement back to Thayer. All of the debt was in dispute. He did not talk to Meyer before returning the statement.

Jalonne testified that she did not have a discussion with anyone from Thayer on February 6, 2015, and did not agree to pay for certain goods and services. She never entered into any type of agreement with Thayer as an individual to pay for feed or supplies.

On June 2, 2022, the trial court entered judgment against Don, Jr., Don, Sr., and Jalonne in the amount of $61,520.66, plus interest and court costs. In relevant part, the trial court made the following rulings: (1) Thayer sought to recover for an action on account; and (2) Thayer proved its action-on-account case by presenting credible evidence that it "provided goods to Defendants, at the request of Defendants, including livestock

6

feed and supplies, over the course of a long running business relationship from September 2005 through December 2010." This appeal followed.

## Standard of Review

A judgment is presumed correct, and the party challenging the judgment bears the burden of proving it erroneous. *Brackney v. Walker*, 670 S.W.3d 455, 458 (Mo. App. 2023). In this court-tried case, our review is governed by Rule 84.13(d) and *Murphy v. Carron*, 536 S.W.2d 30, 31-32 (Mo. banc 1976).[4] We are required to affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014). "We review questions of law decided in a court-tried case *de novo*." *O'Connell v. Deering*, 631 S.W.3d 649, 652 (Mo. App. 2021).

## Discussion and Decision

Defendants present five points on appeal, but we need address only the second, as it is dispositive. In Point 2, Defendants contend the trial court misapplied the law by entering judgment for Thayer on an unpleaded theory of a 2005-2010 open account. This presents a question of law, which we review *de novo*. *O'Connell*, 631 S.W.3d at 652. Defendants argue that they timely objected to evidence offered in support of that theory as beyond the scope of the pleadings. For the following reasons, we agree.

The first issue we must address is what theory of recovery was pleaded in Thayer's petition. Defendants argue that the only pleaded theory was that of "account stated," and not "action on account." We agree.

---

[4] All rule references are to Missouri Court Rules (2024), unless otherwise specified.

"To establish a cause of action in account stated, the party seeking to recover must prove:  (1) the parties had prior financial dealings, an open account; (2) the parties reached an agreement as to the amount due and owing on that account; and (3) the debtor acknowledged this obligation and made an unconditional promise to pay."  *Grant Selsor & Sons Lumber Co. v. Wood*, 872 S.W.2d 150, 153 (Mo. App. 1994); *see Spartan Carpet Distributors, Inc. v. Bailey*, 728 S.W.2d 236, 236 (Mo. App. 1987); *Whelan's, Inc. v. Bob Eldridge Constr. Co.*, 668 S.W.2d 244, 247 (Mo. App. 1984); MAI 26.04 (2020, 8th ed). As explained in *Whelan's, Inc.*:

> An account stated results when parties to an open account reach an agreement as to the totality of the transaction between them.  One essential element of an account stated is an agreement by both parties that the amount set forth in the account is correct and is understood as a final adjustment or statement.  An account stated is created when parties who have had financial transactions between them arrive at a balance due and the party debtor acknowledges his obligation and promises to pay.  An account stated must be predicated on some prior transaction and the consideration to support it is the consideration for the original debt.

*Whelan's Inc.*, 668 S.W.2d at 247 (internal citations omitted).  The agreed amount or balance constitutes a new and independent cause of action, superseding and merging the antecedent causes of action.  *Schwartz v. Fein*, 471 S.W.2d 679, 681 (Mo. App. 1971).

On the other hand, the elements of an action-on-account theory are:  (1) the defendant requested plaintiff to furnish merchandise or services; (2) the plaintiff accepted the defendant's offer by furnishing such merchandise or services; and (3) the charges were reasonable.  *Rank v. Smith*, 601 S.W.3d 564, 566 (Mo. App. 2020); *see Home Serv. Oil Co. v. Cecil*, 513 S.W.3d 416, 419-20 (Mo. App. 2017); *Helmtec Indus., Inc. v. Motorcycle Stuff, Inc.*, 857 S.W.2d 334, 335 (Mo. App. 1993); MAI 26.03 (2020, 8th ed.). An action on account constitutes a suit in contract for each purchase transaction.  *Citibank*

8

*S. Dakota N.A. v. Whiteley*, 149 S.W.3d 599, 601 (Mo. App. 2004); *Med. Shoppe Int'l, Inc. v. Mehra*, 882 S.W.2d 709, 713 (Mo. App. 1994). That is why in MAI 26.03, Paragraph First hypothesizes: "at defendant's request, plaintiff furnished [to defendant or to (*name of third party*)] certain (*describe goods furnished*) between ____, ____ (*state date*) and ____, ____ (*state date*)[.]" *Id*. (italics in original).

When we examine Thayer's petition, it is immediately evident that Counts I and II alleged an account-stated theory of recovery. Count I alleged that Don, Sr. and Jalonne entered into an agreement on February 6, 2015, to pay $45,950.35. Count II alleged that Don, Jr. and Sally also entered into an agreement on February 6, 2015, to pay $45,950.35. As explained above, an account-stated theory of recovery involves the unconditional agreement to pay the amount due and owing. *Schwartz*, 471 S.W.2d at 681. This is a new and independent cause of action, which supersedes and merges the antecedent causes of action for each prior individual purchase transaction. *Id*.

The second question we must address is whether a timely objection was made. We conclude that it was. When Thayer's counsel asked the first question about individual transactions from 2005-2012, defense counsel objected that such evidence would be beyond the scope of the pleadings. The account-stated theory in Thayer's petition was a new and independent cause of action, which superseded all of the prior causes of action for the individual purchases. Therefore, defense counsel's objection was correct and should have been sustained. The trial court, however, overruled the objection and treated it as continuing. Because a timely objection was made, the action-on-account theory was not tried by express or implied consent. *See* Rule 55.33(b); *Romano v. Adams*, 691 S.W.3d 328, 340 (Mo. App. 2024) (failure to timely and specifically object to evidence on the

9

ground that it is beyond the scope of the pleadings constitutes consent for determination of issues thereby raised). The trial court misapplied the law by overruling defense counsel's "beyond the scope of the pleadings" objection.

The third question we must address is whether Thayer proved its account-stated theory of recovery. After examining the entire trial transcript, we conclude that Thayer failed to do so. Because Meyer was one of the partners who operated Thayer, we treat him as a party-plaintiff here. According to Meyer, he met with Don, Sr. at the feed store on February 6, 2015. Thayer had sent Don, Sr. a running account statement, which Don, Sr. signed on February 6, 2015, next to a notation stating "debt in dispute[.]" Meyer also met with Defendants to discuss the feed bill at a residence. Meyer admitted that there was a discussion about the amount owed, but that Defendants did not agree to pay that sum. Instead, Meyer testified: "Don Senior told me he would pay the feed bill if, you know, [my wife and I would] sign off on that farm." During cross-examination, Thayer made many admissions that showed Defendants never unconditionally agreed to pay a specific amount of money to Thayer either jointly or individually. Thayer was bound by Meyer's factual testimony on this issue, which was neither corrected nor explained. *See Austin v. Jarred*, 578 S.W.3d 847, 849 (Mo. App. 2019); *Scott v. Hicks*, 567 S.W.3d 266, 269 (Mo. App. 2019); *Ewanchuk v. Mitchell*, 154 S.W.3d 476, 481 (Mo. App. 2005). Our summary of the facts also incorporates Defendants' testimony, which was included to demonstrate that none of them unconditionally agreed to pay any specific amount of money to Thayer. Given Meyer's binding testimony on the issue and the lack of any relevant admissions by Defendants, Thayer failed to prove an acknowledgement of the debt by Defendants and an unconditional joint promise to pay. *See Grant Selsor & Sons Lumber Co.*, 872 S.W.2d at

10

153; *Spartan Carpet Distributors*, 728 S.W.2d at 236; *Whelan's, Inc.*, 668 S.W.2d at 247. The statement of Don, Sr. that he would pay the entire feed bill himself in exchange for Meyer signing off on the farm was conditional and, therefore, insufficient proof of an account stated even as to him. *See Grant Selsor & Sons Lumber Co.*, 872 S.W.2d at 153-54 (plaintiff did not cite any place in the record which showed that defendant agreed with plaintiff to an amount owed and made an unconditional promise to pay that sum).

When we examine the trial transcript, it is immediately apparent what happened. From the outset, Thayer's counsel ignored the pleaded theory of account stated and instead proceeded to try the case on an action-on-account theory of recovery, which had not been pleaded. After Meyer was asked about transactions predating February 6, 2015, and the trial court overruled defense counsel's objection, Thayer's counsel then proceeded to prove up a long series of individual transactions made prior to that date. Exhibits 1-9 all involved individual purchase transactions over many years, and none of the invoices identified any of the Defendants as the purchasers. At the close of Thayer's evidence, its counsel gave the trial court a copy of MAI 26.03, which is the pattern jury instruction for an action on account. In the judgment, the trial court decided that Thayer's petition was based on an action on account. Thus, it is inescapable that the judgment was entirely based upon an unpleaded theory of recovery.

The last question we must answer is what effect this has on the appeal. The only pleaded theory of recovery was not proven, and the trial court, over proper objection, entered judgment based upon an unpleaded theory of recovery. Under such circumstances, we cannot affirm the judgment. *See, e.g.*, *Turner v. Wesslak*, 453 S.W.3d 855, 860 n.6 (Mo. App. 2014); *Lowe v. Hill*, 430 S.W.3d 346, 350 (Mo. App. 2014). As *Lowe*

11

explained, it is an elementary rule of law that, in the face of an objection, the plaintiff's evidence must conform to the pleading. *Lowe*, 430 S.W.3d at 350; *see also **Browning-Ferris Indus. of St. Louis, Inc. v. Landmark Sys., Inc.***, 822 S.W.2d 569, 571 (Mo. App. 1992) (it is hornbook law that a plaintiff cannot recover for a cause of action not pleaded). In *Lowe*, the western district of this Court held that the plaintiff, having chosen to pursue implied-contract theories, had to recover on those theories alone if she recovered at all. *Lowe*, 430 S.W.3d at 350. When one contract is pleaded and another is proved, it amounts to a total failure of proof as to the contract relied upon and defeats recovery. *Id*. Therefore, the western district reversed and remanded for entry of a judgment in favor of the defendant. *Id*. at 350-51.

We reach the same conclusion here. Thayer failed to prove its pleaded theory of account stated, which defeats recovery. *See, e.g.*, *Lowe*, 430 S.W.3d at 350; ***Allen Quarries, Inc. v. Auge***, 244 S.W.3d 781, 783-86 (Mo. App. 2008) (because the trial court granted a judgment in plaintiff's favor on an unpleaded premises-liability/failure-to-warn theory, and plaintiff failed to prove the pleaded breach-of-contract and negligent-misrepresentation theory, judgment was reversed and the cause remanded to enter judgment for the defendant); ***UT Commc'ns Credit Corp. v. Resort Dev., Inc.***, 861 S.W.2d 699, 701-02 (Mo. App. 1993) (because the trial court entered judgment for plaintiff on an unpleaded theory of mutual mistake and there was no evidence to support the pleaded theory of breach of fiduciary duty, judgment was reversed and the cause remanded to enter judgment for the defendant). Accordingly, the trial court misapplied the law in entering judgment on an unpleaded action-on-account theory, and Defendants were prejudiced by that ruling. Defendants' second point has merit and is granted. The judgment is reversed.

12

The case is remanded with directions for the trial court to enter judgment in favor of Defendants and to reassess court costs in their favor as the prevailing parties. *See* Rule 77.01; ***Bishop v. Cummines***, 870 S.W.2d 922, 926 (Mo. App. 1994) (remanding the case for reassessment of costs in accordance with the opinion).

JEFFREY W. BATES, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCUR

JENNIFER R. GROWCOCK, J. – CONCUR